Okay, we'll call the first case, Hetty A. Viera versus Life Insurance Company Of North America, Mr. Sutton. Good afternoon, Your Honor. My name is James W. Sutton III. I'm the attorney for the appellants Hetty Viera as the Viera as well as Ms. Viera individually. I reserve two minutes for rebuttal. That request will be granted. Thank you. I'd like to briefly begin by giving a short overview of the matter before discussing my client's position on the reversible errors made by the District Court. The District Court's decision which granted the Life Insurance Company Of North America's motion for summary judgment and denied my client's motion for summary judgment. The result of the line is denial of my client's accidental death and dismemberment claim is simply unfair and unjust. My client's purchased an accidental death and dismemberment policy from Lina to discover, to cover exactly what happened, which was Mr. Viera was killed as a direct result of the massive injuries he sustained in a head-on motorcycle accident where he was ejected from his motorcycle when he collided with an automobile. As the Court is aware, Mr. Viera died a few short hours thereafter in a hospital in Colorado. Mr. Viera filled out one application for life and I'm very familiar with the facts and all. Why don't you not waste time and why don't you get your lead? My first point is that the District Court committed a reversible error by failing to apply the arbitrary and capricious standard rather than the de novo standard. I believe this issue is one of first impression in this jurisdiction. When evaluating a challenge to a denial of benefits, courts are to utilize the de novo standard unless the plan clearly conveys discretionary authority to the insurance company. Let me ask a question of you there. You, in the court below in your summary judgment briefing, you argued that for a de novo standard, but you said that it was clear that there was a de novo standard called for here. And on appeal, you're saying there's an ambiguity and so the rule of contra preferentum should be in place. And your opponent says, well you waived that argument. What's your response to the assertion that by not arguing vagueness below, you ought to be prevented from arguing it here? I understand, Your Honor. My positions at the District Court level in my briefs did spend quite a bit of time on the issue of which standards should be utilized. I did not specifically state that there were ambiguities in that. On the contrary, you said it's clear that it's, your assertion was not that it was vague, you asserted it clearly was a de novo standard. There was not a way to interpret it to allow for abuse of discretion or view. So why isn't that a waiver? Well, I think, Your Honor, that I did preserve my right to argue it because of the fact that I argued at length that the de novo standard was appropriate as opposed to the arbitrary capricious standard. It would be a small expansion on that argument to now say that it was ambiguous as opposed to... Your words were, quote, clearly states that Lynn shall be the entity determining whether the loss is satisfactory to it. That's your exact words. And I don't see the record reflecting that you ever argued that it was a de novo standard. I did not argue that there was ambiguities which would create a situation for the de novo standard. Similarly, you never argued in the district court, your argument here of contra pro tentum. Contra pro tentum. You never argued that in the district court. At the district court level, in terms of the argument as to de novo or arbitrary and capricious, the arguments that I made there was basically that the de novo standard was the appropriate standard under the circumstances and the language of the policy. You know, if you read through the language of the policy and it's, I'm quoting, the written or authorized electronic proof of loss satisfactory to us must be given to us at our offices within 90 days of the loss for which the claim is made. I think if you look at the prevailing authority in the other circuit courts, those being the 2nd, 4th, 7th, 8th, 9th, and 10th, those circuit courts have evaluated similar language and found that the appropriate standard was a de novo standard. Well, it may be up for grabs in the 3rd Circuit, but let me answer this. How could you claim that it was the sole cause of accident when even your expert admitted that the presence of Warfarin made Vieira's bleeding worse? He said that himself. He did. He did. And I believe that our medical expert, Dr. Ginda, stated specifically that the injuries and trauma that Mr. Vieira suffered as a result of the accident were more than enough to bring about his death regardless of the medication that he was taking. However, he did state and was clear in his opinion that, you know, if you're on Warfarin or Coumadin, you're going to have more bleeding than you would if you had not. However, conversely, Lina's doctor, Dr. Eaton, didn't use the specific standard in his opinion. He never really answered the question of whether Mr. Vieira's atrial fibrillation condition was the cause of his death and instead stated that the Coumadin therapy significantly contributed to his death, which isn't the actual policy language that we're dealing with. Well, the policy language is that, and I'd ask you, was it the fact that he had this problem? Doesn't your own doctor's admission clearly show that his death was not, quote, the result directly or independently of all other causes? I would argue that it was not directly and independent of all other causes. If you look at the definition of cause, as opposed to the phrasing that Lina's doctor uses, which was significantly contributed, I think that there's a differentiation between those two phrases. I think my doctor, my expert doctor's opinion was very clear that Mr. Vieira's injuries were at such a nature and such an extreme nature that he likely would have passed away regardless of whether or not he was on Coumadin. Can we look at Dr. Guindia's opinion if we're applying an abuse of discretion standard? I mean, assume just for the sake of discussion that we thought that Judge Rubino had it right and that this was an abuse of discretion review of Lina's decision. Aren't we bound to look only at the material that was before Lina at the time it made its decision and Dr. Guindia's opinion wasn't because you folks didn't put it in front of him? Okay. Well, I guess my position on that is that the reviewing court should take into consideration under an abuse of discretion standard, including my client's expert report. Yeah, but how could we say, how could we logically say that Life Insurance Company of North America abused its discretion in not taking into account Dr. Guindia's opinion when Dr. Guindia's opinion wasn't in front of him because you guys didn't put it in front of him? I mean, that, how could that be an abuse of discretion? I think it's abuse of discretion for a number of reasons, and I understand that they did not have my doctor's report in front of them at the time. Well, give me just one good reason. You don't have to give me a number. Just give me one good reason to believe that it could be an abuse of discretion to not take into account something that you don't have in front of you. Okay. I would say that there was abuse of discretion for other reasons. The other reasons being that their own doctor who wrote a report didn't use the appropriate standard in evaluating and writing his opinion. Lina's doctor said that the orphan treatment significantly contributed to the death of Mr. Vera, but didn't ever mention that it was a cause of his death. I think that goes into the argument as to the language of the policy, which is unclear and ambiguous, and discusses whether or not, I can quote it for you, but... Is contributing enough to be something that takes the death out of a covered loss? Let me back up and ask. My understanding is that by the terms of the policy, if it's to be covered, it has to be on the schedule of covered losses. It has to be a result of directly... It has to result independently of all other causes. It has to not have a contribution to it by disease, sickness, or bodily infirmity, and it's not otherwise excluded. So if those are... Am I right that those are the terms? I guess I should start with that. Isn't that the terms of the policy? Yes, Your Honor. The terms of the policy that was used to deny my client's coverage was shown in the letter dated February 18th by Lina. And one of those is not contributed to by disease or sickness or mental or bodily infirmity. So... And another is directly and independently of all other causes. So even if you're right that Dr. Eaton didn't say, and it caused death, if he says it contributed to the death, under the terms of the policy, isn't that a sufficient basis? Well, the common exclusion, and I'm going to quote it here for the panel, is... And that was the specific reason why they denied coverage. And I think in reading through that language and taking a plain reading approach to that language, that Lino was arbitrary and capricious in its decision that the Coumadin treatment was a cause of Mr. Vera's death. And I believe if you read through this in a plain reading, that they can't make the argument that the medical treatment applies to a sickness, disease, or bodily infirmary. Well, just a minute. Isn't arterial fibrillation clearly a sickness, disease, or bodily infirmity? Isn't it? Well, answer the question. Is it? I don't believe it is. You don't think it is? I don't believe that... Given that the treatment requires a drug having a clear effect on a person's blood, how could this condition be regarded as anything but that? I don't believe that that would be considered a sickness, which was the reason why Lino denied coverage. I think it's more arguable that it may be a bodily infirmity, but the reason why Lino denied coverage was based on the fact that they took the position that Mr. Vera's condition was a sickness. If Mr. Vera's condition was a sickness, then why did Lino accept Mr. Vera's application in which he specifically stated on the attachment to his AD&D application? Yeah. Now, on that point, you assert, but there's... If I'm not mistaken, you asked the district court to take Mr. Vera's treatment. You took judicial notice of the fact, or what you asserted on Ms. Vera's behalf was a fact, that the information that was given with the life insurance policy was also stapled to or somehow attached to the accidental death and disability or dismemberment policy. And the district court declined to do that. It didn't take judicial notice of it. So when you say this was before Lino, where is that in the record? You tried to get it in the record with a judicial notice, and the court declined to accept it. So what evidence is there in the record that Life Insurance of North America had that? Well, the initial disclosures that were provided by Lino included the insurability form that was dated and signed the same day that Mr. Vera's application was signed and dated as well. And that was provided to me in the initial disclosures by Lino. So are you asking us to make a factual inference that the court below refused to make? Well, Your Honor, I actually didn't ask the court below to take judicial notice of it because it was included in the initial disclosure. So when I received that letter from Lino in terms of the initial application, as well as the fact that Mr. Vera's application was signed, the addendum to the application, they're dated the same day, they were signed the same day, and the actual application itself was for both Life Insurance and accidental death and dismemberment coverage, and there was an addendum to it which is dated the same day and signed the same day as well. Okay, Mr. Sutton, we'll have you back on rebuttal. Thank you. Mr. Keller? Good afternoon. May it please the court, my name is James A. Keller, and I am counsel for Appalee Life Insurance Company of North America. If it is acceptable to the court, I will refer to my client as Lina, that's how it's commonly known, and it's easier than restating the full name. The court heard from appellant at the outset what I think the case is really about from her perspective. She's frustrated. She believes the policy should be something other than what it is. The statement was made she procured a policy. She did not. Her purchase from Lina, a limited policy. Mr. Keller, doesn't Lina have an obligation? I mean, the whole idea behind the Heasley decision, as I understand it, is that if well-lawyered up insurance companies draft a policy that has an ambiguity in it, that ambiguity is going to run against the Life Insurance Company, right? That's correct, Your Honor. Okay. So, isn't it the case that the district court noted that you could read the proof of loss language in this policy, that is, proof satisfactory to us, in more than one way? I believe that the district court identified that it was argued it could be read more than one way, but the district court determined that it was not ambiguous based on circuit law from the First Circuit, the Tenth Circuit, the Eleventh Circuit, and respectfully, Your Honor, the Third Circuit has interpreted this exact language. Well, not quite. If it had, we wouldn't be here. Most circuits say that language is insufficient. Satisfactory proof is insufficient. It's insufficient for a deferential standard. Your Honor, there's a meaningful distinction between two different types of policy language. There are policies that state satisfactory proof must be provided. Then there's policy language that says proof that is satisfactory to the insurer must be provided. Okay. But the Seventh and Ninth Circuits have found that that was not a clear grant of discretionary authority. The latter language. The second seems to be on board with that as well, right? Your Honor, I would say the second is not. That's the Kinsler decision, and the Kinsler decision was the language in that policy, the exact policy before the Second Circuit was the former language. It was satisfactory proof. I didn't say it was a holding. I said it appears they're on board with that because you've got to acknowledge, at least in dicta, it talks about the satisfactory test language, right? I agree with that, Your Honor. Okay. So if that's the case, if you've got at least three circuits that read this and say, well, that's not a language that gives deferential review, that's at least ambiguous, don't three circuit courts add up enough for us to say that there's ambiguity? Well, Your Honor, I guess I would say no because there are also four circuit courts that have said that language confers discretion. Okay. So if four say we read it as it does. Weren't those cases earlier than the Seventh and Ninth Circuit cases? Most of the cases were, yes, Your Honor. Okay. So the most recent interpretation is that satisfactory to us is not a clear grant of discretionary authority. In the Ninth Circuit and in the Seventh Circuit. Okay. And the fact that four can read it one way and three can read it another way, doesn't that indicate that there's ambiguity or do we assume that the four that read one way and the three that read another way are just confused? Well, Your Honor, I understand that there is a circuit split and so there is some ambiguity nationally as to what that language means. I think the language, I truly believe the language in this case is different. It may seem like a distinction without a difference, but the language in this case doesn't stop at proof of law satisfactory to us. It then says must be given to us. And Judge Rebrano pointed out, and this is footnote seven of his opinion, if you took out the word satisfactory, that phrase makes no sense and it's duplicative. So there are two different parts of that sentence. What must it be? Proof of law satisfactory to us. Where do you send it? To us. And Judge Rebrano, as a matter of law, determined that was not ambiguous. Yes, he did. And so we would be reviewing his determination on that as a matter of law de novo, right? Correct. Okay. Under Kinzler, the Second Circuit says saying that the proof has to be satisfactory to us doesn't really add much to anything because that just means you've got to give us something that we like, and that's how it would have to be. Otherwise, insurance companies would just say come on in and take our money. Of course it has to be satisfactory to them. What's your response to that line of reasoning? Well, I guess two thoughts, Your Honor. One, in appellants, then plaintiffs briefed below, as Judge Rebrano pointed out, at A14 in the record, the plaintiff said that that language, quote, clearly states that Linus shall be the entity determining whether the loss is satisfactory to it. So, one, there's a statement by the plaintiff that they thought it conferred discretion. Two, I would say that in 2007, Judge Young, in a case called Leonard, identified, evaluated language that said proofs of loss must be satisfactory to us and determined that that conferred discretion. Well, if you're going to count district court cases, don't you have at least two from the Eastern District of Pennsylvania that go against you? You've got a decision from Judge Padova and a decision from Judge Schiller that say it's not enough to grant discretion? Your Honor, respectfully, I would say no because those policies, and I'm familiar with those policies, they involve my client, they're long-term disability benefit policies and the language is different. And it's different in a way that... Does it have the satisfactory to us language in them? It does not. It says satisfactory proof must be provided as opposed to proof that is satisfactory to us. And multiple courts have found that to be... If we decide that the policy did not clearly grant discretion but that the district court should have reviewed the administrator's decision de novo, should we send this back or are you arguing in your brief that we should decide this based on the policy and the record in front of us? Your Honor, I'm arguing that you, the court, can and should decide it on the policy in front of you and the record in front of you. I think there's no dispute under an abusive discretion standard or de novo standard as to what the policy says. And the court's already pointed out a number of the provisions. No one denies what the policy says. If we say this is the de novo standard, instead of sending it back, what in the record would allow us to affirm this? Because we're allowed to affirm on anything in the record. What in the record is such that we can say there's not a jury question here, that as a matter of law, that there was a contribution by bodily injury or some other infirmity which contributed to his death? Your Honor, that would be a number of things. In the record, A274, the proof of loss form, Mrs. Vieira said that her husband shattered his pelvis in the accident and died from internal bleeding, bleeding which was contributed to by Coumadin. The death summary by the doctor at the ER, and this is the record, 138 stated that his diagnosis of death was multiple injuries and a fully Coumandized patient due to atrial fibrillation. It seems if your interpretation of this policy is correct, your company shouldn't ever sell this policy to any employer who has an employee that's to be covered who is on Coumadin. Your Honor, respectfully, I would disagree. How could that be? Sure. So this is a policy that was sold to an offshore operator, oil rig operator, Warnbeck Offshore Operators. If Mr. Vieira, and sometimes these discussions sound unseemly, but if Mr. Vieira fell off a rig, hit the platform, and died immediately, it's irrelevant whether he had atrial fibrillation or Coumadin. That's an accident. The circumstances of this case are such that the accident, it is a limited policy. So if he hit anything other than his head, it sounds to me like there's no way he can recover under your interpretation. If Mr. Vieira, under the circumstances of this case, because, and I could go through additional items in the record, your Honor, that would indicate how the Coumadin and the bleeding is what, at least in part, and at least indirectly, contributed to his death. Shouldn't a jury decide this question? Well, your Honor, the jury should not decide this question because it's an ERISA case and there is no right to a jury trial. So the matter here really is up for decision by Judge Rubrino, and he reviewed the record before him and has made a decision. Well, he made it on a summary judgment standard. Obviously, he didn't weigh facts because he couldn't at the summary judgment stage, right? That's correct, your Honor. He gave deference to the policy in the first place. So he didn't look at the facts anew, let's put it that way. He gave deference to the decision maker. Judge Rubrino relied upon the administrative record that was before him, which is the standard on an arbitrary and capricious review. Now, it is true. We're saying if you lose on that, if we disharbon that, we're going to go with the Seventh Circuit, the safe harbor provision, that you're on a de novo standard here. The question is, is there enough here which would clearly show that no fact finder, whether a jury or a judge, could adjudicate by saying that this was not contributed to by other bodily injury or disease? It's my position, your Honor, the answer to that question is yes, and I guess the best explanation of that is the plaintiff and Judge Jordan raised a good point as to whether the medical report of the plaintiff should have been considered by Judge Rubrino, but it was. Well, on a de novo standard, it would be though, right? Yes. On a de novo standard, we wouldn't be limited to what was in front of, we would be able to look at Dr. Guindia's report, and if we look at Dr. Guindia's report, that doctor says pretty emphatically that Coumadin was not a contributing factor to the death, that had it not been for the accident, the guy would be alive, that the life-saving steps they took would have offset the effects of the Coumadin, and therefore, if I'm reading his opinion right, it's not a contributing factor. He died because of the accident. Your Honor, I understand that that is at least a panelist's view of the report. I actually don't think that's what he says. Well, shouldn't a fact finder then, I mean, if it's open to more than one view, shouldn't a fact finder take a look at that? Because if we view it in a light most favorable to your opponent and you acknowledge that it could be viewed that way, doesn't that mean it has to go to a fact finder? I guess, Your Honor, I don't acknowledge that it would be viewed that way. Dr. Guindia says, the hospital staff did everything possible to reverse the warfarin effect and limit the bleeding. Although the presence of warfarin did make the bleeding worse, and the emergency room report confirms he died of bleeding. So actually, I think Dr. Guindia's report, and Judge Rubino discusses this, he does consider it as a fact finder, that Dr. Guindia's report is actually consistent with our expert report and with the determination that the warfarin, no matter how Dr. Guindia describes it, the effects of his report. I thought his conclusion was that Mr. Vieira's death was not directly or indirectly in whole or in part caused by or resulted from the warfarin therapy. That's a direct statement of the plaintiff's expert. I agree that that's the quote that he picks up from the policy, the text of it, which is what Judge Rubino, Judge Rubino evaluated this exact point, Your Honor, and said, but the medical substance of his opinion is not consistent with that conclusion. He couldn't have done that on summary judgment, could he? I mean, it would be improper, wouldn't it not, for Judge Rubino to have interpreted the plaintiff's expert's testimony in anything other than the light most favorable to the expert at the summary judgment, excuse me, most favorable to the plaintiff at the summary judgment stage. Well, Your Honor, I think the issue here, and Your Honor touched on it at the outset, is whether this report should have been permitted or considered at all. And I will say that is an issue we raised with Judge Rubino at the time he allowed this report to come in and suggested perhaps this should go to my client and let them review it first. As a practical matter, I think there's plenty of other stuff in the record here, which we outlined in our brief, that supports his decision and supports my client's interpretation. But I can't represent to the court that this report is outside of the administrative record. It is, and it was not considered by my client below. And if they don't review it, it would be part of the record, though, would it not? Judge Rubino, under the Luby case, Judge Rubino would be permitted to consider it if he so chose. Luby says if the administrative record is fully developed, you may just consider the record. But you may consider other evidence if the court deems it helpful. If I may very briefly, Your Honor, because I've heard some discussion of the Hertzberger case and Judge Posner, and I'm not here to re-argue that case, but I would note, and I'm aware the Seventh Circuit has subsequently suggested that proof satisfactory to us is not enough, and they've cited back the Hertzberger. Actually, in that case, Judge Posner says you don't need magic language, and here's some language that might be okay, proof satisfactory to us. It then gets, that part of his opinion gets lost, so it's just one observation on that opinion. Thank you. But Diaz came after it. It did, Your Honor. I don't disagree with that, and that part of Judge Posner's opinion, it drops out. I don't know what happened to it. They overturned it. I suppose so. Thank you very much. Thank you, Your Honor. Mr. Sutton. Just very briefly, Your Honor, just to touch on a couple points that were made. I think that the expert reports, if looked at from a de novo standard, clearly show that there is a genuine issue of material fact, which would then warrant the matter to go to the fact finder. What evidence shows that there is a material fact that his condition did not contribute to his death? Well, Your Honor, if you look at the extensive damage that was done and injuries that was done to Mr. Vera in terms of a motorcycle accident, there was a laceration of the iliatic artery, I believe, and that laceration in and of itself, it was a complete laceration, would likely have caused Mr. Vera's death, regardless of whether he was on Coumadin or not. Where is that in the record before us? There is reference in the record to a laceration of Mr. Vera's iliatic artery. Yeah, but there's nothing in the record which says that that in and of itself would have resulted in his death. I think the point there, Your Honor, is that despite that not being in the record, Lina's expert was still able to take the position that Mr. Vera would have survived, but for the fact he's on Coumadin, and I just don't think without having that in the record that that's a credible position that he could take in his report. Just a quick second point. In terms of the law and the issue of what standard should be used for this exact type of language, it's the appellant's clear position here. I'd just like to very briefly just note this language from the Kintzler decision where the court mentioned that but a more fundamental point than is fine distinction about wording is the word satisfactory, whether the phrase satisfactory proof or the phrase proof satisfactory to the decision maker is an inadequate way to convey the idea that a plan administrator has discretion. Every plan that is administered requires submission of proof that will satisfy the administrator. No plan provides benefits when the administrator thinks that the benefits should not be paid, exclamation point. In light of that, Your Honor, I believe that there was reverse order here in terms of the standard that was applied. Thank you. Mr. Sutton, we thank counsel, and we'll take the matter under advisement.